2016 IL App (3d) 140359

Opinion filed January 27, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| *In re* COMMITMENT OF<br>RICKY A. WILCOXEN | )<br>)<br>) | Appeal from the Circuit Court<br>of the 9th Judicial Circuit,<br>Fulton County, Illinois, |
| (The People of the State of Illinois | )<br>) | |
| Petitioner-Appellee, | )<br>) | Appeal No. 3-14-0359<br>Circuit No. 02-MR-28 |
| v. | )<br>) | |
| Ricky A. Wilcoxen, | )<br>) | Honorable<br>Steven R. Bordner, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

**OPINION**

¶ 1        Respondent, Ricky A. Wilcoxen, appeals from the trial court's order that found probable

cause did not exist to warrant an evidentiary hearing to determine if respondent was still a

sexually violent person.  We reverse and remand for further proceedings.

¶ 2                                        FACTS

¶ 3        In 1992, respondent was sentenced to serve 22 years in prison for attempted criminal

sexual assault.  Pursuant to sentencing guidelines in effect at the time, his scheduled release date

was May 4, 2002. On April 30, 2002, five days before he was to be released, the State filed a petition to have respondent declared a sexually violent person. 725 ILCS 207/1 *et seq.* (West 2002). Seven years later, in June 2009,[1] the matter proceeded to a jury trial. At trial, two of the State's experts testified that they reviewed the information contained in respondent's Illinois Department of Corrections files. Both experts opined that if respondent was released into the community there was a substantial probability that he would reoffend. The defense expert, Dr. Luis Rosell, agreed that respondent continued to meet the diagnosis for pedophilia, but opined that respondent was not a sexually violent person.

¶ 4		The jury found that respondent was a sexually violent person, and the trial court committed respondent to the custody of the Department of Human Services (DHS) until such time as he was no longer a sexually violent person. Thereafter, respondent was confined within the DHS treatment and detention facility at Rushville. On direct appeal, we affirmed the jury finding and commitment. *In re Commitment of Ricky A. W.*, No. 3-09-0771 (2011) (unpublished order under Supreme Court Rule 23).

¶ 5		On September 21, 2011, October 28, 2013, and March 7, 2014, the State filed motions for a finding of no probable cause based upon its review of respondent's reevaluation reports. These motions were not ruled on before the April 11, 2014, probable cause hearing. Each of the State's motions was based on a report prepared by Dr. Steven Gaskell. Gaskell concluded in each of his reports that respondent should continue to be found a sexually violent person and remain in DHS custody. Respondent did not file a petition for discharge or conditional release. Respondent also

---

[1]After the State filed its sexually violent person petition in 2002, a variety of pretrial events occurred that delayed the beginning of the trial until 2009. These pretrial events are not relevant to this appeal.

did not waive his right to petition for discharge, which obligated the court to hold a probable cause hearing to determine whether he was entitled to an evidentiary hearing on the issue of whether he was still a sexually violent person.

¶ 6       Gaskell's most recent evaluation was dated February 28, 2014.  The report was prepared using a variety of sources, which included: an interview with respondent, review of respondent's criminal history, psychiatric evaluations, a penile plethysmography (PPG) evaluation, DHS treatment progress reports, medical and mental health records, and Static-99R and Static-2002R evaluations.

¶ 7       Respondent's criminal history included 1973 convictions for attempted murder, rape, and indecent liberties with a child, and a 1992 conviction for attempted criminal sexual assault.

¶ 8       During an interview with Gaskell, respondent said that he did not feel that he was attracted to children anymore, he knew the consequences, and he no longer had fantasies about children.  Respondent admitted that in the past he was sexually attracted to girls between the ages of three and nine years old and he had sexual offenses against 16 female children.  Respondent said that he was currently attracted to adult women between the ages of 20 and 30 years old.  Respondent also said that he was doing well in treatment, he was more assertive, and he tried to offer meaningful feedback.  Respondent said that he was not likely to reoffend because he had no "inclination to do it anymore," he no longer thought about sexual offenses, he avoided television shows that depicted children, and he felt disgusted by the thought of sexual offenses.

¶ 9       Gaskell noted that in February 2011, respondent did not actively participate in sex offender treatment.  However, subsequent reports documented that respondent was attending his treatment groups, conducted himself appropriately in group sessions, demonstrated an

3

understanding of the decision-making model, showed motivation in progressing through treatment, and incorporated feedback from his peers and facilitators.

¶ 10    In December 2012, DHS investigated an incident where respondent was found hugging his roommate. During the investigation, respondent disclosed that in 2011, he performed oral sex on another resident. A DHS staff member then encouraged respondent to disclose and process the incident during his group session.

¶ 11    Based on a review of respondent's record and clinical interviews, Gaskell concluded that respondent met the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 (2013) criteria for pedophilic disorder, sexually attracted to females, and personality disorder with antisocial traits.

¶ 12    On July 24, 2012, respondent submitted to a PPG evaluation. On the PPG, respondent displayed a clinically significant arousal to two segments: female grammar and female preschool. On the posttest questionnaire, respondent reported that he was "most sexually attracted in real life" to females ages seven to adult. Respondent also reported having erectile difficulties, but noted that he successfully masturbated on a biweekly basis.

¶ 13    Gaskell further evaluated respondent using several actuarial assessments. On the Static-99R, respondent scored a four. To translate respondent's score into a statistical probability of reoffense, Gaskell first classified respondent as a high-risk/high needs individual because he was previously found to be a sexually violent person. Gaskell then compared respondent's Static-99R score with similarly situated individuals who were found to sexually reoffend at a rate of 20.1% in 5 years and 29.6% in 10 years. On the Static-2002R evaluation, respondent scored a two, which placed him in the low-risk category for being charged or convicted of another sexual offense.

¶ 14    After reviewing respondent's sex offender treatment history, Gaskell concluded that respondent had not made sufficient progress to lower his risk or to be ready for conditional release.  Gaskell said that "it is substantially probable [respondent] will engage in acts of sexual violence in the future" and recommended that respondent continue to be found a sexually violent person and remain committed to DHS.

¶ 15    On March 13, 2013, counsel for respondent filed a motion for an independent evaluation. The trial court granted respondent leave to obtain an independent evaluation and appointed Rosell.  A report prepared on December 31, 2013, documented Rosell's evaluation of respondent. In the report, Rosell noted that he had reviewed respondent's treatment evaluations and record, conducted a one-hour interview with respondent, performed two actuarial analyses, and considered the effect of respondent's age on his probability of reoffense.

¶ 16    In his report, Rosell noted that respondent began sex offender treatment in February 2011.  As of December 6, 2013, respondent had completed phase one of treatment, and he was halfway through his timeline.  At the time of the evaluation, respondent was attending five different group sessions, three days per week.  Respondent also had completed eight different programs: Mindfulness, DBT (interpersonal effectiveness, emotional regulation, distress tolerance, emotional regulation), Good Lives Group, Orientation, Thinking Errors, Treatment Foundation, Autobiography, and Decision Making Model.

¶ 17    Rosell noted that, behaviorally, respondent had been a "model resident" with the exception of a single incident of misconduct in 2011.  Respondent told Rosell that he admitted to DHS staff that he performed oral sex on one occasion while he was committed.  Respondent said that he had not engaged in any other sexual misconduct while he was incarcerated or committed.

¶ 18      During Rosell's interview, respondent said that he would like to get a conditional release "where [he] could do treatment in Peoria." Respondent explained that in the past, "boredom" had caused him to reoffend. Respondent thought that as long as he stayed busy, he was safe from reoffending. Respondent recognized that in the past he initiated interactions with young females by grooming and becoming familiar with the minor's family dynamics. Respondent knew that he could no longer make excuses to be around children. Respondent also intended to seek support from others if he became evasive and began to associate with a young girl. Respondent's support group included his sister and brother-in-law. Respondent acknowledged that he had caused much harm and he victimized approximately 15 individuals, and he rated his current risk of reoffense as a 0 on a scale of 0 to 10.

¶ 19      Rosell also stated that "in the past [respondent] met criteria for pedophilia, attracted to females, nonexclusive type"; however, the course of pedophilia "may fluctuate, increase, or decrease with age" and advanced age is likely to diminish the frequency of sexual behavior involving children. Rosell noted that sexual behaviors are reduced in men over their lifespan and sexual arousal reduced with age. Further, respondent's offenses were committed prior to 1992, when he was 39 years old and younger. Respondent was 61 years old at the time of evaluation. Rosell opined that such an age-related decline decreased respondent's probability of reoffense. Rosell cited several psychological studies that supported his opinion.

¶ 20      Rosell also assessed respondent's mental state and probability of reoffending using a variety of tests that included a PPG, Static-99R, and Multisample Age-Stratified Table for Sexual recidivism rates (MATS-1). On the PPG, respondent exhibited significant but slight arousal on 2 of the 22 segments, which were deviant and within respondent's victim profile. Respondent scored a three on the Static-99R, which placed him in the moderate range for

6

recidivism. On the MATS-1, respondent's score of four placed him in the high range. Respondent's MATS-1 score had a corresponding eight-year recidivism rate of 6% among individuals aged 60 to 69 years old who scored in the high range.

¶ 21     Rosell concluded that respondent had made significant progress in demonstrating and experiencing behavioral change, and respondent's diagnoses did not provide enough information regarding the likelihood that he will engage in future acts of sexual violence. Further, respondent had made substantial progress in treatment, was of an advanced age where his risk of reoffending was mitigated, and he denied current sexual attraction to children. Rosell opined that respondent did not pose a substantial risk of sexual violence.

¶ 22     After a hearing, the trial court granted the State's motion for a finding of no probable cause, and respondent filed a notice of appeal.

¶ 23                                        ANALYSIS

¶ 24     On appeal, respondent argues that the trial court erred in finding that there was no probable cause to warrant an evidentiary hearing. We agree.

¶ 25                                 I. Standard of Review

¶ 26     At the outset, respondent argues that his claim of error is subject to review under the abuse of discretion standard. See *In re Detention of Cain*, 402 Ill. App. 3d 390, 396 (2010). The State argues that *de novo* review applies. See *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 40. For the reasons that follow, we find that respondent's argument is subject to *de novo* review.

¶ 27     The standard of review applicable to the evaluation of the trial court's finding of no probable cause in a sexually violent person (SVP) discharge proceeding is not entirely clear. Historically, the appellate courts of this state have applied an abuse of discretion standard. See

7

*Cain*, 402 Ill. App. 3d at 396; *In re Detention of Cain*, 341 Ill. App. 3d 480, 482 (2003); *In re Ottinger*, 333 Ill. App. 3d 114, 120 (2002). However, in 2012, our supreme court applied *de novo* review to the *related* issue of whether an expert's opinion is relevant to establish probable cause to believe that the petitioner is "no longer" or is not "still" a sexually violent person. (Internal quotation marks omitted.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70. To reach this issue, the supreme court was first required to determine the quantum of proof at a postcommitment probable cause hearing. *Id.* ¶ 56. The supreme court concluded that the postcommitment quantum of proof is the same as the precommitment standard expressed in *In re Detention of Hardin*, 238 Ill. 2d 33, 44 (2010). *Stanbridge*, 2012 IL 112337, ¶ 64. In determining the precommitment probable cause quantum of proof, the *Hardin* court was influenced by the probable cause standard applied by the Wisconsin Supreme Court in *State v. Watson*, 595 N.W.2d 403 (Wis. 1999).[2] *Hardin*, 238 Ill. 2d at 47-48. The *Watson* court likened a precommitment probable cause hearing to a preliminary hearing in a felony case. *Watson*, 595 N.W.2d at 418. We find that such an analogy is also instructive as to the applicable standard of review in the present case.

¶ 28 To support a felony charge in Illinois, the State must establish probable cause at a preliminary hearing. *People v. Majors*, 405 Ill. App. 3d 879, 880 (2010). Generally, a trial court's probable cause ruling in a criminal case is reviewed *de novo*. See *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that determinations of reasonable suspicion and probable cause should be reviewed *de novo*); see also *People v. Jones*, 374 Ill. App. 3d 566, 573

---

[2]We note that *Lieberman*, the case relied on by the State, cited *Watson* as authority for *de novo* review of the issue of whether respondent established probable cause during SVP release proceedings. *Lieberman*, 2011 IL App (1st) 090796, ¶ 40.

(2007) (where a motion to quash arrest or suppress evidence turns on a legal question of reasonable suspicion or probable cause, an appellate court reviews the issue *de novo*); *People v. Boomer*, 325 Ill. App. 3d 206, 210-11 (2001) (ultimate question of probable cause to arrest is subject to *de novo* review). While review of a criminal probable cause ruling also involves a review of the trial court's factual determinations, in an SVP discharge proceeding, a trial court is not allowed to weigh conflicting evidence or make findings of fact. *Stanbridge*, 2012 IL 112337, ¶ 64 (probable cause hearing is a summary proceeding and it is not a substitute for a full evidentiary hearing where disputed questions of fact can be resolved and credibility determination can be made). Notably, in *Stanbridge*, the supreme court did not overrule the *Lieberman* court's application of *de novo* review to the "ultimate question of whether respondent established probable cause." *Lieberman*, 2011 IL App (1st) 090796, ¶ 40. Since *Stanbridge*, our appellate court has observed that "some Illinois courts have held, albeit without analysis, that a trial court's decision not to proceed to an evidentiary hearing following a probable cause hearing under the Act is reviewed only for an abuse of discretion." *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 48. However, the *Kirst* court found that the abuse of discretion standard was inapplicable as the operative facts were not in dispute, no testimony was heard by the trial court, and the trial court was simply reviewing documentary evidence. *Id.* ¶¶ 48-50. Thus, we find that an appeal from a trial court's finding of no probable cause presents only a question of law, which we review *de novo*. See *Id.* ¶ 50.

¶ 29                                  II. Merits

¶ 30        Respondent argues that the trial court erred in finding that there was no probable cause to warrant an evidentiary hearing because the psychological evaluations showed his true remorse, a low risk of reoffense, and a substantial change in circumstances that warranted an evidentiary

hearing. The State argues that the trial court properly granted its motion because Rosell's report failed to establish that respondent was no longer a sexually violent person. After a careful review of the record and the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq*. (West 2008)), we conclude that respondent met the very low burden to secure an evidentiary hearing.

¶ 31    The Act allows the State to seek a civil commitment of an individual who has been convicted of a sexually violent offense. The Act defines an SVP as an individual who has "been convicted of a sexually violent offense" and who "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2008). If the State proves beyond a reasonable doubt that an individual is a sexually violent person, that individual may be indefinitely committed "until such time as the person is no longer a sexually violent person." 725 ILCS 207/35(f), 40(a) (West 2008).

¶ 32    Following a commitment under the Act, the DHS is responsible for evaluating the individual's mental condition within 6 months of the initial commitment and again thereafter at least every 12 months. 725 ILCS 207/55(a) (West 2008). The purpose of these examinations is to determine if the committed individual has made sufficient progress to be conditionally released or discharged. *Id*.

¶ 33    A committed individual has three mechanisms under which he may seek a discharge: (1) the Secretary of Human Services (Secretary) determines that the individual is no longer an SVP and authorizes the committed individual to petition the court for discharge (725 ILCS 207/65(a)(1) (West 2008)); (2) the committed individual undergoes one of the periodic examinations and does not affirmatively waive the right to petition the court for discharge (725

10

ILCS 207/65(b)(1) (West 2008)); and (3) the committed individual petitions for discharge at a time other than the periodic examination and without approval of the Secretary (725 ILCS 207/70 (West 2008)).

¶ 34       In the instant case, respondent utilized the second mechanism to seek a discharge from DHS custody.  At the time of respondent's six-month evaluation, respondent received a written notice that he had the right to petition for discharge over the Secretary's objection.[3]  725 ILCS 207/65(b)(1) (West 2008).  Respondent did not waive this right.  As a result, the court was required to "set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person."  *Id*.  Section 65(b)(1) of the Act provides that "[i]f a person does not file a petition for discharge, yet fails to waive the right to petition under this Section, then the probable cause hearing consists only of a review of the reexamination reports and arguments on behalf of the parties."  *Id*.

¶ 35       In *Stanbridge*, the supreme court noted that a probable cause hearing on a petition for discharge is " 'intended to be preliminary in nature, a "summary proceeding to determine essential or basic facts as to probability" *** remaining cognizant of the respondent's liberty rights.' "  *Stanbridge*, 2012 IL 112337, ¶ 59 (quoting *Hardin*, 238 Ill. 2d at 52, quoting *Watson*, 595 N.W.2d at 420).  During these proceedings, the court is to determine—without *weighing* the submissions of either respondent or the State—whether the movant has established " ' "a *plausible account* on each of the required elements to assure the court that there is a substantial

---

[3]Because the statute identifies this as the second way of seeking discharge, for the purposes of our analysis, respondent would be properly characterized as the "movant" in this proceeding.  See *Stanbridge*, 2012 IL 112337, ¶¶ 58-64 (quoting and citing *Hardin*, 238 Ill. 2d at 48-53).

basis for the petition." ' "  (Emphasis in original.)  *Id.* ¶ 62 (quoting *Hardin*, 238 Ill. 2d at 48, quoting *Watson*, 595 N.W.2d at 420).

> "To support a finding of probable cause on a petition for discharge under section 65(b)(1) *** the movant bears the burden to show sufficient evidence to warrant a hearing on whether the person is '*still* a sexually violent person.'  (Emphasis added.)  725 ILCS 207/65(b)(1), 70 (West 2008).  To make that determination, the court must find that there is a plausible account that 'the committed person is *no longer* a sexually violent person.'  (Emphasis added.)  725 ILCS 207/65(b)(2) (West 2008).
>
> Given the statutory definition of a 'sexually violent person,' it follows that in a discharge proceeding, the committed individual must present sufficient evidence that he no longer meets the elements for commitment: (1) he *no longer* 'has a mental disorder'; or (2) he is *no longer* 'dangerous to others because the person's mental disorder [*no longer*] creates a substantial probability that he *** will engage in acts of sexual violence.'  (Emphasis added.)  725 ILCS 207/5(f), 15 (West 2008)."  (Emphases in original.)  *Id.* ¶¶ 67-68.

¶ 36    Applying the *Stanbridge* reasoning to the instant case, respondent, as the moving party, bore the burden to produce "plausible evidence" that demonstrated a change in circumstances that led to his sexually violent person finding.  *Id.* ¶ 72.  Such a change could include: "a change in the committed person, a change in the professional knowledge and methods used to evaluate a person's mental disorder or risk of reoffending, or even a change in the legal definitions of a mental disorder or a sexually violent person, such that the trier of fact could conclude that the person no longer meets the requisite elements."  *Id.*

12

¶ 37    Respondent did not argue that he no longer suffered from pedophilia.  Rather, respondent argues that the circumstances that led to the original finding of sexual violence have changed because of: (1) progress he personally has made; and (2) a change in the professional understanding about the nature and mechanics of his disorder.  Respondent contends that these changes have mitigated the impact of his mental disorder so that there is no longer a substantial probability that he will reoffend.  We find that the following evidence from the probable cause hearing supported respondent's claim and warranted an evidentiary hearing.

¶ 38                           A. Respondent's Treatment Activities

¶ 39    Respondent began treatment and services in early 2011.  As of December 6, 2013, he had completed stage one of his treatment and was into stage two, attending five group sessions three days per week.  The treatment respondent had successfully completed addressed mindfulness, maintaining healthy interpersonal relationships, thinking errors, decision-making, and confronting his personal history and his history of offending.  After reviewing respondent's treatment progress documents, respondent understood how to recognize, correct, and avoid situations that put him at risk to offend, and he understood he had a support network that included his sister and brother-in-law.

¶ 40                               B. Respondent's Attitude

¶ 41    After respondent began services and treatment in 2011, the subsequent DHS reports indicated that he had not only attended all treatment groups that he had been recommended to take, but he had also completed assignments, been prepared for group sessions, and participated appropriately.  He was an active and willing participant in his treatment.  He had identified and taken ownership of his sexual offenses, acknowledged that he had wronged and hurt his victims, and had expressed remorse.  Respondent also believed he could correct his behavior.

¶ 42 Respondent had a single documented incident of misconduct during his DHS commitment. Two years before the probable cause hearing, DHS staff caught respondent hugging his roommate and discovered that respondent had also performed oral sex on another resident. Respondent confessed that he performed the sex act and the reports did not document another incident of misconduct. Overall, Rosell stated that respondent had been "a model resident."

¶ 43 Respondent's commitment to his treatment plan and ownership of his single incident of misconduct demonstrated a clear change in respondent's attitude from the time of his commitment—when he refused to participate in treatment—to the more recent reports that documented respondent's successful completion of numerous treatment programs.

¶ 44                                   C. Change in Professional Understanding

¶ 45 Rosell opined that respondent was no longer sexually violent under the statute because his mental health disorders did not automatically cause recidivism, he made substantial progress in treatment, and he reached an advanced age. This latter observation relates to emerging scientific information that older individuals are less likely to reoffend as they age. The data provided by Rosell established that sexual behaviors are reduced in men over their lifespan and sexual arousal reduces with age. Respondent's offenses were committed prior to 1992, when he was 39 years old and younger. At the time of the report, respondent was 61 years old. Certainly, arguments of propinquity and accessibility would be relevant to this issue at an evidentiary hearing, but for purposes of a probable cause determination, respondent has undeniably aged and the scholarly findings provide a plausible account that he will not engage in future acts of sexual violence.

¶ 46                                   D. Objective Testing Results

14

¶ 47 Both Rosell and Gaskell tested respondent's risk of recidivism using various actuarial instruments. Gaskell's actuarial analysis compared respondent's results with a high-risk/high need sample because respondent was previously found to be sexually violent. Even with this enhancing factor, Gaskell rated respondent at four (moderate to high risk) on the Static-99R and at two (low risk) on the Static-2002R. Rosell did not include an enhancing factor in his analysis, and he rated respondent at a three (moderate risk) on the Static-99R.

¶ 48 Gaskell and Rosell also evaluated the results of respondent's PPG and agreed that respondent exhibited clinically significant arousal on 2 of 22 segments. These results, while meaningful, certainly do not compel a conclusion that it is "substantially probable" that respondent will reoffend. Indeed, if probable means it is more likely than not that respondent will reoffend, and substantially probable means his reoffending is substantially more likely to occur than not; these results of objective, statistical tests militate against, not in favor of, that finding.

¶ 49 Overall, these facts established probable cause for an evidentiary hearing as they documented a change in respondent's behavior and professional knowledge. This evidence set forth a plausible account that both respondent and the professional understanding of pedophilia have changed such that there is no longer a substantial probability that respondent will reoffend and that he is a sexually violent person.

¶ 50 The dissent relies on several faulty premises in reaching its position. First, the dissent contends that we rely on an implicit comparison to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et. seq.* (West 2008)) to support our holding. However, this contention finds no support in our analysis. Rather, we emphasize that, as our supreme court noted in *Stanbridge*, the initial hearing in an SVP discharge proceeding is preliminary and intended to be a summary proceeding

15

to determine essential or basic facts. *Stanbridge*, 2012 IL 112337, ¶ 59. As such, respondent has a lighter burden as he need only present evidence that establishes a plausible account that he is no longer a sexually violent person.

¶ 51 Second, the dissent argues that our analysis overlooks the inherent distinction between a conditional release and discharge proceedings. This distinction is immaterial at the probable cause hearing stage as the burden on respondent remains the same in both proceedings— establish a plausible account that he is no longer an SVP. See 725 ILCS 207/60(c), 65(b)(1) (West 2008); *Stanbridge*, 2012 IL 112337, ¶ 67.

¶ 52 Finally, the dissent misconstrues respondent's burden by suggesting that the trial court was required to consider the competing reports in determining whether to advance respondent's petition. Respondent need not prove anything at the probable cause hearing as his burden was one of production, not of proof. In assessing whether respondent has met this burden, the trial court does not weigh the evidence or resolve the ultimate substantive question of whether respondent is still sexually violent, but only assesses whether respondent has presented sufficient evidence to warrant an evidentiary hearing. *Stanbridge*, 2012 IL 112337, ¶¶ 58-64. Here, we find that respondent has satisfied this burden of production and the cause merits further proceedings.

¶ 53 We acknowledge that respondent may not be able to establish at an evidentiary hearing that he is no longer a sexually violent person. However, this appeal involves the preliminary issue of whether respondent presented evidence that entitled him to an evidentiary hearing. Based on the very low probable cause standard and the fact that the court may not weigh evidence at this early stage, we find that respondent satisfied his burden of production and this evidence presented probable cause for an evidentiary hearing.

16

¶ 54                                                    CONCLUSION

¶ 55          The judgment of the circuit court of Fulton County is reversed and remanded with

directions.

¶ 56          Reversed and remanded with directions.

¶ 57          JUSTICE CARTER, dissenting.

¶ 58          I respectfully dissent from the majority's finding that the present issue is subject to *de

novo* reviewing.  I also dissent from the majority's ultimate holding that respondent met the

probable cause standard and was entitled to an evidentiary hearing.  For the reasons that follow, I

would affirm the trial court's ruling.

¶ 59                                              I. Standard of Review

¶ 60          The majority acknowledges, and I agree, that the courts of this state have historically

reviewed an SVP probable cause ruling for an abuse of discretion.  See *Cain*, 402 Ill. App. 3d at

396; *Cain*, 341 Ill. App. 3d at 482; *Ottinger*, 333 Ill. App. 3d at 120.  The majority then notes

that in *Stanbridge*, the supreme court applied *de novo* review "to the *related* issue of whether an

expert's opinion is relevant to establish probable cause."  (Emphasis in original.)  *Supra* ¶ 27.

Because respondent does not raise the same issue as in *Stanbridge*, I see no reason to deviate

from the abuse of discretion standard.  The current proceeding required the trial court to consider

the competing reports from the State's expert and an independent evaluator.  These reports

documented similar findings regarding respondent's progress and treatment, but reached differing

conclusions.  Thus, the court was required to exercise some discretion in determining if either of

the reports provided probable cause to advance respondent's discharge petition to an evidentiary

hearing.

¶ 61                                               II. Probable Cause

¶ 62    I further disagree with the majority's finding that the examination reports provided probable cause to warrant an evidentiary hearing as: (1) the psychological evaluations were not relevant to a discharge proceeding; (2) a close reading of the evaluations clearly indicates that respondent has not made sufficient progress in treatment and the common professional understanding of respondent's disorder has not changed to establish probable cause to believe that respondent is no longer a sexually violent person; and (3) the majority's characterization of respondent's burden as "very low" mistakenly conflates this proceeding with that of a first-stage postconviction petition.

¶ 63                                      A.

¶ 64    I believe that the evidence failed to satisfy respondent's burden of production as the reports prepared by Gaskell and Rosell addressed respondent's readiness for a conditional release instead of a discharge—the remedy that respondent was seeking. While these two proceedings both entail a probable cause hearing, the respective standards for an evidentiary hearing are distinct. See 725 ILCS 207/60, 65 (West 2008). In a discharge proceeding, a committed individual must present "sufficient evidence to warrant a hearing on whether the person is '*still* a sexually violent person.' " (Emphasis in original.) *Stanbridge*, 2012 IL 112337, ¶ 67 (quoting 725 ILCS 207/65(b)(1) (West 2008)). In a conditional release proceeding, a committed individual must establish that "cause exists to believe that it is not substantially probable that the person will engage in acts of sexual violence *if on release or conditional release*." (Emphasis added.) 725 ILCS 207/60(c) (West 2008). Unlike a discharge, conditional release places a committed individual in a very structured environment where the individual: (1) will continue to receive treatment; (2) will reside in secure housing; (3) has agreed to comply with the treatment provider, DHS, and the court; and (4) has agreed to comply with behavioral monitoring

18

requirements imposed by the court and DHS. 725 ILCS 207/60(e) (West 2008). There are no postdischarge restrictions in the discharge statute. 725 ILCS 207/65 (West 2008).

¶ 65        Here, Gaskell and Rosell assessed respondent's preparation for conditional release instead of discharge. Rosell stated at the beginning of his report that the evaluation was "conducted to determine if [respondent] is appropriate for *conditional release*." (Emphasis added.) During the interview portion of Rosell's report, respondent said that if he were released, he would rely on his support group and conditional release agent. Similarly, respondent told Gaskell that if he were released, his intervention plan would include contacting a conditional release agent or someone in his support network. Gaskell ultimately concluded that respondent had "not made sufficient progress in sex offense specific treatment to lower his risk or *to be ready for Conditional Release*." (Emphasis added.) However, a discharge does not include the strictures of a conditional release, and respondent would not have the benefit of the referenced conditional release agent or the requirement to receive additional treatment. The distinction between a discharge and conditional release proceeding, therefore, makes the psychological evaluations prepared by Gaskell and Rosell insufficient to establish probable cause for a evidentiary hearing in a discharge proceeding.

¶ 66                                    B.

¶ 67        Even assuming, *arguendo*, that the evaluations were prepared for a discharge proceeding, I do not find that they provided probable cause to warrant an evidentiary hearing. In the interview portion of Rosell's report, respondent told Rosell that boredom had caused him to reoffend in the past and "[a]s long as I keep busy then I am safe." Respondent explained to Rosell that he intended to stay away from places or situations where children were present by, for example, shopping later at night. Respondent noted that if he met a young girl, he would

19

leave the area and contact his conditional release agent. As discussed *supra*, in this discharge proceeding, respondent would not have access to a conditional release agent.

¶ 68 Respondent told Gaskell that his triggers included being around children and boredom. Respondent said that his interventions included stopping the behavior, contacting his conditional release agent or another individual in his support network, or a police officer. These statements indicate that respondent continues to struggle with deviant thoughts and requires further treatment. Further, both reports documented that respondent had only completed half of his treatment, and respondent told Gaskell that he wanted to get to phase three of treatment and he was open to other recommended groups.

¶ 69 Additionally, the analyses prepared and reviewed by both experts did not support advancing respondent's petition. Respondent's PPG evaluation, which was documented in both reports, established that respondent had a "significant but slight arousal" to two segments which were deviant and within his victim profile. The actuarial analyses prepared by both experts were varied and placed respondent in categories ranging from "Low Risk" to the "high range." Considering the results of the various analyses in context with respondent's interview comments, and respondent's completion of only half of his treatment program, I would find that he has not shown probable cause to believe that he has made substantial progress in treatment.

¶ 70 I also do not agree that respondent provided plausible evidence that the professional knowledge of pedophilia has changed such that he is no longer dangerous to others because of his mental disorder. The majority finds, in part, that the advanced age reduction theory discussed in Rosell and Gaskell's reports provided probable cause to advance the petition. However, both reports note that the age issue is far from universally accepted. Specifically, Rosell acknowledged that "[t]he age issue is controversial with some disparate findings among other

20

researchers who have found evidence that for some high risk offenders the age invariance effect may not be present." Gaskell similarly noted in his discussion of age that the "research clearly indicates that there is far from universal agreement on many aspects of how age at release impacts recidivism rates." As there is not a clear professional consensus on the impact of age on recidivism, I would find that this evidence does not satisfy respondent's burden.

¶ 71        In light of the evidence presented at the hearing, I would find that the trial court did not abuse its discretion when it granted the State's motion for a finding of no probable cause. Even if I accepted the majority's view that this issue is subject to *de novo* review, I would find that respondent failed to satisfy his burden of production to warrant an evidentiary hearing.

¶ 72                                             C.

¶ 73        Finally, I disagree with the majority's characterization and reliance on the "very low" standard. *Supra* ¶¶ 30, 50. This statement frames the proceedings in a light similar to our review of the summary dismissal of a postconviction petition where the courts of this state have held that the petitioner faces a "low threshold." See *People v. Allen*, 2015 IL 113135, ¶ 24; *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 11; *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 30; *People v. Henderson*, 2014 IL App (2d) 121219, ¶ 22; *People v. Munoz*, 406 Ill. App. 3d 844, 850 (2010); *People v. Donley*, 314 Ill. App. 3d 671, 674 (2000). However, an SVP probable cause hearing is vastly different from the first stage of a postconviction proceeding.

¶ 74        The Post-Conviction Hearing Act provides a three-stage process for postconviction relief. 725 ILCS 5/122-1 *et seq*. (West 2008). In the first stage of proceedings, the trial court determines whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2008). The supreme court has recognized this "gist" standard as a low threshold

21

for survival because most petitions are drafted by defendants with little legal knowledge or training. *Hodges*, 234 Ill. 2d at 9. At the first stage, the State does not have an opportunity to raise any arguments against the petition and the trial court is required to make an independent assessment as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). It is not until the second stage of proceedings that the Post-Conviction Hearing Act allows the State to file a motion to dismiss the petition. 725 ILCS 5/122-5 (West 2008). An evidentiary hearing on the petition occurs only at the third stage of proceedings. 725 ILCS 5/122-6 (West 2008).

¶ 75　　　　In contrast, SVP discharge proceedings may be initiated by the inaction of a committed individual after an examination. See 725 ILCS 207/65(b)(1) (West 2008). When the proceedings are initiated by a respondent's inaction, the matter is set for a hearing without any pleading requirement. *Id*. The resultant probable cause hearing "consists only of a review of the reexamination reports and arguments on behalf of the parties." *Id*. The committed individual also has the right to counsel during these proceedings. *Id*. To advance the petition to an evidentiary hearing, the trial court must find that the committed individual has established a plausible account that he is no longer an SVP. *Stanbridge*, 2012 IL 112337, ¶ 62.

¶ 76　　　　Contrasting the Post-Conviction Hearing Act and the Act, I do not think that a committed individual's burden during a probable cause hearing is similar to the "low threshold" a *pro se* defendant faces during the first stage of postconviction proceedings. See *Edwards*, 197 Ill. 2d at 244. The majority's characterization of the "very low" standard tends to conflate these two proceedings and unintentionally lowers the probable cause bar. Such a lowering would be inconsistent with the Act, which allows an individual multiple opportunities to petition for discharge. See 725 ILCS 207/65(b)(1) (West 2008); see also Pub. Act 97-1075, § 10 (eff. Aug.

22

24, 2012) (repealing 725 ILCS 207/70). Because a committed individual may petition for discharge after each statutory evaluation period, even by inaction, and he has the benefit of counsel during the subsequent proceedings, I do not think that the standard for this preliminary hearing should be construed as "very low."

¶ 77       For the reasons stated, I respectfully dissent from the majority's opinion. As noted above, I would affirm the trial court's ruling.