# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### In re Commitment of Curtner, 2012 IL App (4th) 110820

---

| | |
|---|---|
| Appellate Court Caption | In re: the Commitment of TROY A. CURTNER, a Sexually Violent Person, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. TROY A. CURTNER, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0820 |
| Argued<br>Filed | June 19, 2012<br>July 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings seeking respondent's commitment as a sexually violent person, the trial court did not abuse its discretion in refusing to dismiss an allegedly prejudiced juror or in instructing the jury that for purposes of the requirement that the State allege and establish that respondent's mental disorder made it "substantially probable" that he would engage in acts of sexual violence, "substantially probable" meant "much more likely than not." |
| Decision Under Review | Appeal from the Circuit Court of Coles County, No. 10-MR-138; the Hon. James R. Glenn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

William D. McGrath (argued), of Law Offices of Bob Dunst, of Mattoon, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erica Seyburn (argued), Assistant Attorneys General, of counsel), for the People.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Steigmann and Cook concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, respondent, Troy A. Curtner, was adjudicated a sexually violent person under the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 to 99 (West 2008)). On appeal, he argues the trial court erred by (1) declining to dismiss a juror who had posed a question to the bailiff midtrial regarding the extent of respondent's dangerousness; (2) failing to declare a mistrial when several jurors questioned whether respondent had access to their home addresses; and (3) rejecting respondent's proposed jury instruction of the definition of "substantially probable." For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    To provide a legal context for the background in this case, we note that three criteria must be alleged and established before a person may be committed as a sexually violent person under the SVP Act: (1) the person has been convicted of a sexually violent offense (725 ILCS 207/15(b)(1)(A) (West 2008)); (2) the person suffers from a mental disorder (725 ILCS 207/15(b)(4) (West 2008)); and (3) the person is dangerous to others because his mental disorder creates a substantial probability that he will engage in acts of sexual violence (725 ILCS 207/15(b)(5) (West 2008)).

¶ 4    In July 2010, the State filed a petition for respondent's involuntary commitment as a sexually violent person. The State alleged respondent had been convicted of a sexually violent offense, aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2000)), in Coles County case No. 02-CF-628, and sentenced to eight years in prison. In June 2010, prior to respondent's release, a psychologist, Dr. Martha Bellew-Smith, conducted a psychological examination, which revealed respondent suffered from paraphilia and a not-otherwise-specified (NOS) personality disorder with antisocial features. Dr. Bellew-Smith concluded respondent was dangerous to others and it was substantially probable that, without treatment, he would engage in future acts of sexual violence.

¶ 5 Also in July 2010, the trial court ordered respondent detained by the Illinois Department of Human Services upon his release from prison, after finding the State had sufficiently proved probable cause to believe respondent was subject to commitment as a sexually dangerous person.

¶ 6 In April 2011, respondent's jury trial began. Prior to the presentation of evidence, the parties stipulated to the admission of respondent's aggravated-criminal-sexual-abuse conviction in case No. 02-CF-628. Because the parties are familiar with the evidence presented at trial, we summarize only that which is necessary for the purposes of this appeal.

¶ 7 Dr. Bellew-Smith testified as the State's expert in the field of psychology and in detail about her pretrial examination of respondent. In general, she explained that respondent suffers from paraphilia, in that he has sexual urges or fantasies involving a nonconsenting partner. In particular, he suffers from hebephilia, which is described as a sexual disorder whereby the person is aroused by pubescent females. He also suffered from an NOS personality disorder with antisocial features.

¶ 8 In Dr. Bellew-Smith's opinion, respondent was a moderately high risk to reoffend. Based on all of the characteristics applicable to respondent, the doctor opined that, to a reasonable degree of psychological certainty, it was substantially probable that respondent would commit acts of sexual violence. She testified that she used "more likely than not" to define "substantially probable" in this case.

¶ 9 Also testifying as the State's expert witness was psychologist Dr. Edward Smith. In September 2010, Dr. Smith prepared a report after meeting with respondent, which indicated that he and Dr. Bellew-Smith shared the same diagnoses of respondent–paraphilia and an NOS personality disorder with antisocial features. Dr. Smith further diagnosed respondent with depressive disorder, though that diagnosis was not particularly relevant to his predisposition to engage in sexual violence.

¶ 10 In Dr. Smith's opinion, to a reasonable degree of psychological certainty, due to his mental disorder, respondent is dangerous and there exists a substantial probability that he will engage in future acts of sexual violence. Dr. Smith defined "substantially probable" as "much more likely than not."

¶ 11 Respondent presented the testimony of his expert witness, Dr. Luis Rosell, a forensic psychologist, who diagnosed respondent with an NOS personality disorder with antisocial features. Dr. Rosell disputed the other doctors' diagnoses of paraphilia. He testified respondent did not meet the criteria of a sexually violent person.

¶ 12 After deliberations, the jury found respondent was a sexually violent person. In May 2011, respondent filed a posttrial motion, claiming (1) the jury's verdict was against the manifest weight of the evidence, and (2) he was entitled to a new trial based on the improper admission of certain evidence and several alleged trial errors, including (a) the trial court's instruction to the jury of the definition of "substantially probable," (b) the court's failure to excuse a juror who questioned whether respondent was dangerous enough to kill a potential victim, and (c) the jurors' inquiry as to whether respondent had access to their respective addresses.

¶ 13 In July 2011, the trial court denied respondent's motion, and in August 2011, the case

proceeded to a dispositional hearing. The court remanded respondent to the custody of the Department of Human Services. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15                          A. Allegation of Impartial Jury

¶ 16    Respondent first argues the trial court erred by not excusing the juror who, in the middle of trial, told the bailiff he would like to know if respondent was dangerous enough to "kill one of the kids." The bailiff brought this to the court's attention, and the court, in turn, brought it to the parties' attention. All agreed the juror should be questioned outside the presence of the other jurors. In chambers, the court advised the juror they were aware he had a question. The juror told the court that no other juror knew of his question. The following exchange occurred:

> "THE COURT: All right. In Illinois, questions of witnesses by jurors are discouraged, and it is the juror's duty to determine the facts only from the evidence that's presented in the case, what the lawyers present. And then it's your job to determine–not only to determine those facts from the evidence, but then apply the law that I give you to those facts and in that way decide your case, decide the case.
>
> Are you able to do that if your question is not answered?
>
> JUROR: Oh yeah. I was just–that just made me wonder if that's, you know, related and that's the reason I asked him if it was legal to ask that question.
>
> THE COURT: All right. Another thing I want to ask you is I've been telling you and the other jurors not to form or express any opinion on the case until it is submitted to you for deliberation. Have you already formed an opinion on this case?
>
> JUROR: No, no, I haven't.
>
> THE COURT: So you believe that you can listen to the evidence and make your determination of fact from the evidence that's presented?
>
> JUROR: Yes.
>
> THE COURT: And apply the law?
>
> JUROR: Yeah.
>
> THE COURT: All right."

¶ 17    Respondent argues the juror showed bias and demonstrated he had a predetermined belief regarding respondent's dangerousness. Addressing the issue of respondent's dangerousness, the following exchange had occurred during the juror's questioning:

> "MR. McGRATH [respondent's counsel]: What was your question for the bailiff?
>
> JUROR: Well, it wasn't–to see if he was dangerous and I couldn't figure out why no one said anything if he was capable of like, you know, hurting some one of them, killing them or something like that.
>
> MR. McGRATH: Was it the word 'dangerous' that brought that to your mind?
>
> JUROR: Yeah."

¶ 18    After the questioning, respondent's counsel argued the juror should be replaced because his answers demonstrated "a very serious misunderstanding of the evidence." Counsel claimed the answers were "troubling as far as whether he can, in fact, wait until the evidence is in to make a decision." According to counsel, "he's prejudged what he thinks the issue is in this case or at least an important issue for him."

¶ 19    The trial court declined to remove the juror, stating as follows:

"First of all, if–I don't see any bias or prejudice from what he said or even posing that question, and I–I can't even tell from that question if it adversely affects the defense or the State. I can't tell if by that question he means more needs to be shown to him to react a certain way or not.

He clearly hasn't been instructed as to the law yet, and he's verbalizing his willingness and his perceived ability to follow the instructions and follow the law that's presented to him.

***

I don't think there is cause to excuse this juror. As I said earlier, I recognize that it might be the safe approach, but I think it's the wrong approach based on his responses to all of our questions, so the respondent's request that [the juror] be replaced with one of the alternates is denied."

¶ 20    The crux of respondent's argument is the juror should have been dismissed because he was prejudiced against respondent by unreasonably, in respondent's opinion, questioning the extent of respondent's dangerousness and whether he was considered dangerous enough to kill potential victims. It is well understood that a defendant has the right to a trial before an impartial and unbiased jury; that is, one capable and willing to decide the case solely on the evidence before it. *People v. Runge*, 234 Ill. 2d 68, 102-03 (2009). The standard for juror impartiality is whether the juror had such fixed opinions that he could not judge impartially. *Runge*, 234 Ill. 2d at 103.

¶ 21    The question of whether jurors have been influenced and prejudiced "to such an extent that they would not, or could not, be fair and impartial" involves a determination that must rest in sound judicial discretion. *People v. Whitehead*, 169 Ill. 2d 355, 402 (1996), *overruled in part on other grounds by People v. Coleman*, 183 Ill. 2d 366 (1998). The trial court should inquire of the juror to discover as much information as possible. After the trial court has made an appropriate inquiry, it has wide discretion in deciding how to handle and respond to potential juror bias because it can appraise the juror face to face, something a court of review cannot do. *Runge*, 234 Ill. 2d at 105.

¶ 22    In this case, the trial court and each counsel conducted a proper inquiry into the juror's question. They sought to discover the basis for the juror's concern and questioned him on whether he had formed any opinion on the case. The juror indicated he would not make a decision on the issue of respondent's dangerousness until he heard all of the evidence. He further indicated he understood respondent was presumed not to be a sexually violent person.

¶ 23    Given the facts and the circumstances surrounding this issue, we cannot say that the trial court abused its discretion in denying counsel's request to dismiss the juror. The court considered dismissing the juror as "the safe approach" but decided that would be "the wrong

approach based on his responses" to the questions posed. We conclude the court's determination that the juror could be fair and impartial was not an abuse of discretion.

¶ 24                                    B. Allegation of Mistrial

¶ 25    Respondent further claims the trial court erred in failing to order a mistrial when advised by the bailiff that members of the jury questioned whether respondent had access to their home addresses. Respondent did not object at the time this was brought to the court's attention but did include the issue in his posttrial motion. Nevertheless, citing several Illinois cases which reiterate the requirement that respondent both object at trial and renew that objection in a posttrial motion, the State insists respondent forfeited the issue. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988). Respondent has not filed a reply brief and therefore has not addressed the application of the plain-error doctrine to this issue. In his opening brief, he stated only that he had included this issue in his posttrial motion, apparently believing this properly preserved the issue for review.

¶ 26    It is well established that sexually-violent-person cases are civil in nature and the rules of civil proceedings govern except when otherwise specified. See *In re Detention of Samuelson*, 189 Ill. 2d 548, 553-54 (2000); 725 ILCS 207/20 (West 2008). The application of the plain-error doctrine as provided in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which applies only to appeals in criminal, postconviction, and juvenile cases, is not one of those stated exceptions. Following this logic, the State claims we should apply the civil plain-error rule, a similar principle to the criminal rule, but one only applied in "exceedingly rare" cases. See *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010). However, in a previous decision, this court considered the criminal plain-error doctrine in a sexually-violent-person case. See *In re Ottinger*, 333 Ill. App. 3d 114, 117-18 (2002). In that case, we found "no error, plain or otherwise." *Ottinger*, 333 Ill. App. 3d at 118. Likewise, we will apply it here.

¶ 27    First, it is inherent in the plain-error rule that the challenged ruling must be in error. The challenged ruling in this case is the trial court's denial of respondent's motion for a mistrial on the basis of the jurors' concerns that respondent had access to their individual home addresses. In claiming error, respondent relies on *People v. Coleman*, 50 Ill. App. 3d 40, 43 (1977), where this court held the mere suspicion of bias in a juror is insufficient to impeach a verdict. Respondent attempts to couple the jurors' concerns about their safety with the one juror's question about the extent of respondent's dangerousness to constitute sufficient evidence of juror bias. Respondent argues that taking both issues together strengthens the evidence, making the claim that the jurors held a predisposition toward conviction even more compelling and justifying a mistrial.

¶ 28    Respondent speculates the jury was not impartial because jurors complained about the publication of their names and addresses. "Evidence that the jury was displeased that their anonymity was lost in a murder trial, however, is a long way from evidence that jurors were less than impartial." *Whitehead v. Cowan*, 263 F.3d 708, 722 (7th Cir. 2001). We agree with our supreme court that "[w]e cannot infer *** on this basis that an honest juror would therefore give sway to his emotions and disregard the fundamental requirement of a fair trial

and decide to convict a person in order to be absolutely secure." *Whitehead*, 169 Ill. 2d at 402-03.

¶ 29   It is mere speculation to suggest the publication of addresses would prejudice the jury, and, accordingly, we do not think a hearing was necessary to investigate any potential misconduct on these facts, nor that the allegation requires a new trial. The trial court's duty to investigate potential juror misconduct arises only when the party alleging misconduct makes an adequate showing to overcome the presumption of jury impartiality. In other words, mere speculation is not enough. *Whitehead*, 263 F.3d at 722. Respondent cannot demonstrate error, plain or otherwise, in the court's decision to deny respondent's request for a mistrial on this basis, even coupled with the prior allegation of juror bias. There is not enough evidence to demonstrate the jury was not impartial.

¶ 30                           C. Definition of "Substantially Probable"

¶ 31   Finally, respondent contends the trial court erred in defining the term "substantially probable" to mean "much more likely than not," rather than "practically certain." The term is not defined in section 5 of the SVP Act (725 ILCS 207/5 (West 2008)). The trial court and the State used a definition found in Illinois case law. See *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086 (2000) (defining "substantially probable" to mean "much more likely than not" (internal quotation marks omitted)). Respondent claims the First District in *Bailey* erred by relying on two Wisconsin cases that so defined the term. He insists the definition should not be taken from another state but from our own statutes.

¶ 32   Section 4-5 of the Criminal Code of 1961 (720 ILCS 5/4-5 (West 2008)) defines "knowledge" as follows:

"(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the *substantial probability* that the fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is *practically certain* to be caused by his conduct." (Emphases added.)

¶ 33   Relying on the legislature's definition of "knowledge," which seems to use the phrases "substantial probability" and "practically certain" interchangeably, respondent claims the jury was given the wrong definition. We disagree.

¶ 34   The *Bailey* court looked to Wisconsin law because Wisconsin's SVP statute is substantially similar to Illinois's statute. In fact, Wisconsin's definition of a sexually dangerous person is identical to ours. At the time *Bailey* was decided, Wisconsin's statute stated that a person "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Wis. Stat. § 980.01(7) (1998). Section 5 of our SVP Act states that a person "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2008). Because these two statutes were identical, it was only logical to look to Wisconsin for guidance on the definition

of "substantially probable."

¶ 35 Our supreme court has referred to Wisconsin law in this context on several occasions. See *In re Detention of Hardin*, 238 Ill. 2d 33, 48 (2010) (adopting Wisconsin's definition of "probable cause" in a sexually-violent-person case); *People v. Botruff*, 212 Ill. 2d 166, 181 (2004); *People v. Masterson*, 207 Ill. 2d 305, 324-25 (2003) (both cases expressly recognizing that the Wisconsin SVP statute is similar to the Illinois SVP statute). Further supporting our decision, we note the Second District followed *Bailey* and adopted the Wisconsin definition as well. See *In re Detention of Hayes*, 321 Ill. App. 3d 178, 189 (2001).

¶ 36 It is within the trial court's discretion to determine which jury instructions to give to the jury, and that decision will not be disturbed absent an abuse of discretion. *Curi v. Murphy*, 366 Ill. App. 3d 1188, 1199 (2006). "Whether a court abused its discretion depends on whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Curi*, 366 Ill. App. 3d at 1199.

¶ 37 We find the trial court did not abuse its discretion in tendering to the jury the definition of "substantially probable" as "much more likely than not." This definition accurately apprised the jury of the relevant legal principle and, therefore, we find giving that instruction, rather than the one offered by respondent, was not error.

¶ 38                                                III. CONCLUSION

¶ 39 For the foregoing reasons, we affirm the trial court's judgment.

¶ 40 Affirmed.