NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190916-U

NO. 4-19-0916

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* COMMITMENT OF DONNIE R. BARRETT | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Morgan County |
| Petitioner-Appellee, | ) | No. 07MR51 |
| v. | ) | |
| Donnie R. Barrett, | ) | Honorable |
| Respondent-Appellant). | ) | Jeffery E. Tobin, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err by finding no probable cause was shown to warrant an evidentiary hearing.

¶ 2    Respondent, Donnie R. Barrett, a person committed under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2018)), appeals the Morgan County circuit court's December 9, 2019, order, in which the court found no probable cause to warrant an evidentiary hearing on whether respondent was still a sexually violent person. On appeal, respondent argues the circuit court erred by finding no probable cause. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    In August 2007, the State filed its petition to have respondent committed as a sexually violent person under the Act. Due to an updated version of the Diagnostic and Statistical Manual (DSM-5), the State filed an amended petition in December 2014. In October

2016, the circuit court held a jury trial on the State's amended petition. The jury found respondent was a sexually violent person. At the dispositional hearing held on the same day as the sexually violent person finding, the circuit court ordered respondent to be committed to the care and custody of the Department of Human Services (Department) for secure inpatient treatment until he was no longer a sexually violent person. The court found the secure inpatient treatment was the least restrictive means under the circumstances of respondent's case. That same day, the court entered a written order, committing respondent to institutional care in a secure facility. Respondent appealed, and this court affirmed the circuit court's judgment. *In re Commitment of Barrett*, 2018 IL App (4th) 170204-U. Respondent filed a petition for leave to appeal with the supreme court, which denied his petition. *In re Commitment of Barrett*, No. 123697 (Ill. Sept. 26, 2018) (supervisory order).

¶ 5        In October 2019, Amy S. Louck Davis, Psy.D., a licensed clinical psychologist, conducted respondent's reevaluation at issue in this appeal. Her report noted respondent was 44 years old and this was his third reexamination. In preparing the report, Dr. Louck Davis attempted to interview respondent, but respondent declined to be interviewed. Dr. Louck Davis did review numerous documents regarding respondent in preparing her report. The report set forth respondent's relevant history, including his criminal, sexual, and treatment histories. Dr. Louck Davis also explained the Department had a five-phase treatment program. The five phases, in order, were the following: (1) assessment, (2) accepting responsibility, (3) self-application, (4) incorporation, and (5) transition. The report explained respondent signed his consent for treatment in October 2012 but had never meaningfully participated in treatment until this reexamination period. In November 2018, respondent met with a treatment provider and requested to begin attending treatment groups. In January 2019, respondent began attending

the treatment foundations group, and the next month, he began attending the good lives exploration group. In June 2019, respondent also began attending the decision-making model and anger management groups. The report further noted respondent tried to attend his treatment groups regularly but did miss a few times from January to September 2019. Respondent was attentive in group sessions and contributed to discussions. Page 14 of the report expressly stated respondent was still in the first phase of treatment. Additionally, the report noted respondent did not have any rule violations during the reexamination period and was maintaining the highest privilege status.

¶ 6 Regarding mental health disorders, Dr. Louck Davis opined respondent suffered from the following mental disorders based on the DSM-5: (1) pedophilic disorder, sexually attracted to both, nonexclusive type; (2) antisocial personality disorder; and (3) alcohol use disorder, moderate, in a controlled environment. She explained her reasoning for those diagnoses. As to the issue of respondent's dangerousness, she used the Static-99R and the Static-2002R risk assessments. Respondent placed in the " 'Well Above Average Risk' " category on both assessments. Respondent's score of 9 on the Static-99R was associated with a 36.6% to 60.5% sexual recidivism risk over five years, and his score of 10 on the Static-2002R was associated with a 30% to 53.4% sexual recidivism risk over five years. Dr. Louck Davis further explained respondent's scores were 99.7% higher than the sex offenders in the sample. Respondent's Static-99R score indicated he was 6.9 times more likely to reoffend than the typical sex offender, and his Static-2002R score indicated he was 7.32 times more likely to reoffend than the typical sex offender. Dr. Louck Davis also noted respondent had the following empirical risk factors for future sexual offending: (1) any deviant sexual interest or sexual interest in children, (2) sexual preoccupation, (3) antisocial personality disorder, (4) grievance or

hostility, (5) poor problem-solving, (6) general self-regulation problems, (7) resistance to rules and supervision, (8) impulsivity or recklessness, (9) history of a nonsexual crime, (10) procriminal attitudes, (11) childhood behavioral problems or criminality, and (12) lack of emotionally intimate relationships with adults. Dr. Louck Davis opined respondent had no protective factors such as age, medical condition, or sex-offender treatment. She further found respondent's mental disorders predisposed him to engage in acts of sexual violence. Dr. Louck Davis opined respondent's condition had not changed since his last reexamination and respondent remained substantially probable to commit a future act of sexual violence. She also opined respondent had not made sufficient progress in his treatment to be conditionally discharged and should continue to be committed to the Department's treatment and detention facility for secure care and sexual offense specific treatment.

¶ 7 On October 25, 2019, the State filed a motion for a finding of no probable cause based upon Dr. Louck Davis's third annual reexamination report. In its motion, the State noted respondent had not affirmatively waived his right to petition the court for discharge, and thus section 65(b)(1) of the Act (725 ILCS 207/65(b)(1) (West 2018)) required the circuit court to hold a probable-cause hearing.

¶ 8 On December 9, 2019, the circuit court held the probable-cause hearing. After the attorneys made their arguments on probable cause, the court found no probable cause was shown to believe respondent was no longer a sexually violent person. That same day, the court entered its written order.

¶ 9 On December 27, 2019, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017), and thus this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). See 725 ILCS 207/20

(West 2018) (noting the proceedings under the Act are civil in nature).

¶ 10                                    II. ANALYSIS

¶ 11        Respondent's sole contention on appeal is the circuit court erred by finding no probable cause was shown to warrant an evidentiary hearing to determine whether respondent was still a sexually violent person.  The State disagrees, arguing the circuit court's decision was correct.

¶ 12        At the time of each reexamination under the Act, the committed person receives notice of the right to petition the circuit court for discharge.  725 ILCS 207/65(b)(1) (West 2018).  If the committed person does not affirmatively waive that right, like respondent in this case, the court must "set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so changed that he or she is no longer a sexually violent person."  725 ILCS 207/65(b)(1) (West 2018).  At such a probable-cause hearing, the court only reviews the reexamination reports and hears the parties' arguments.  725 ILCS 207/65(b)(1) (West 2018).  If the court finds probable cause does exist, then it must set an evidentiary hearing on the issue.  725 ILCS 207/65(b)(2) (West 2018).  Since the circuit court only considered Dr. Louck Davis's reexamination report and the facts contained in that report are not in dispute, our review of the court's finding of no probable cause is *de novo*.  See *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 50, 40 N.E.3d 1215.

¶ 13        With all probable-cause hearings under the Act, the circuit court's role is "to determine whether the movant has established a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition."  (Emphasis in original and internal quotation marks omitted.)  *In re Detention of Stanbridge*, 2012 IL 112337,

¶ 62, 980 N.E.2d 598 (quoting *In re Detention of Hardin*, 238 Ill. 2d 33, 48, 932 N.E.2d 1016, 1024 (2010)). For a respondent to receive an evidentiary hearing under section 65(b)(2) of the Act, the court must find a plausible account exists that the respondent is " 'no longer a sexually violent person.' " (Emphasis omitted.) *Stanbridge*, 2012 IL 112337, ¶ 67 (quoting 725 ILCS 207/65(b)(2) (West 2008)). Thus, a respondent is only entitled to an evidentiary hearing if plausible evidence shows the respondent (1) no longer suffers from a mental disorder or (2) is no longer dangerous to others because his or her mental disorder no longer creates a substantial probability he or she will engage in acts of sexual violence. *Stanbridge*, 2012 IL 112337, ¶ 68 (citing 725 ILCS 207/5(f), 15 (West 2008)). Under the Act, "substantially probable" means "much more likely than not." (Internal quotation marks omitted.) *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37, 972 N.E.2d 351; see also *In re Detention of Hayes*, 321 Ill. App. 3d 178, 188, 747 N.E.2d 444, 453 (2001).

¶ 14    In this case, Dr. Louck Davis found respondent suffered from (1) pedophilic disorder, sexually attracted to both, nonexclusive type; (2) antisocial personality disorder; and (3) alcohol use disorder, moderate, in a controlled environment. Both the Static-99R and Static-2002R assessments placed respondent in the highest risk categories for reoffending. Respondent's score of 9 on the Static-99R was associated with a 36.6% to 60.5% sexual recidivism risk over five years, and his score of 10 on the Static-2002R was associated with a 30% to 53.4% sexual recidivism risk over five years. Dr. Louck Davis further explained respondent's scores were 99.7% higher than the sex offenders in the sample. His Static-99R score indicated he was 6.9 times more likely to reoffend than the typical sex offender, and his Static-2002R score indicated he was 7.32 times more likely to reoffend than the typical sex offender. In addition to respondent being in the highest risk categories for reoffending, Dr.

Louck Davis's report noted respondent had 12 other empirical risk factors that increased his risk to reoffend. Thus, Dr. Louck Davis considered more than just the percentages in determining respondent was substantially probable to engage in a future act of sexual violence. Respondent contends Dr. Louck Davis did not explain how respondent exhibited the 12 factors or explain how each factor itself affected respondent's risk of reoffending. However, a full review of the report shows the 12 factors are supported by the facts contained in the report. The report also notes the risk factors identified "represent statistically significant correlations with recidivism." Additionally, we note respondent cites no authority for his claim antisocial personality disorder cannot be both a diagnosis and an empirical risk factor when a person has been diagnosed with more than one mental disorder. Moreover, neither respondent's age nor his medical condition decreased his risk. Respondent takes issue with the fact his age is not a protective factor. However, in her report, Dr. Louck Davis explained the actuarial assessments she used take age into consideration and no additional age-based risk reduction was warranted. The aforementioned evidence indicates respondent still suffered from mental disorders and was dangerous to others because his mental disorders created a substantial probability he would engage in acts of sexual violence.

¶ 15        While respondent participated in group treatment therapy during this reevaluation period, he was still in the first phase of the treatment program, which is explicitly stated on page 14 of Dr. Louck Davis's October 2019 report. Dr. Louck Davis stated respondent had "only just begun to participate in sex offense specific treatment." The October 2019 reevaluation report does show a change in respondent's attitude towards treatment, but it does not demonstrate respondent's conditions and risk had changed during the reexamination period at issue.

¶ 16        Last, in support of his argument, respondent cites the case of *In re Commitment of*

*Wilcoxen*, 2016 IL App (3d) 140359, ¶ 1, 48 N.E.3d 277, where the reviewing court reversed the circuit court's order finding no probable cause existed to warrant an evidentiary hearing to determine if the respondent was still sexually dangerous. There, while the 61-year-old respondent was still in phase two, he attended five group sessions three days per week and had successfully completed "mindfulness, maintaining healthy interpersonal relationships, thinking errors, decision-making, and confronting his personal history and his history of offending." *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 39. The facts showed the respondent's commitment to his treatment program, which was a change in his attitude from his initial refusal to engage in treatment. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 43. The reviewing court also noted the data provided by the independent examiner showing sexual behaviors are reduced in men over their lifespan and sexual arousal reduces with age, thus making older males less likely to reoffend with age. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 45. Last, the State's examiner rated respondent as moderate to high risk on the Static-99R and low risk on the Static-2002R, and the independent examiner rated the respondent as a moderate risk on the Static-99R. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 47. The reviewing court concluded the evidence set forth a plausible account that both the respondent and the professional understanding of pedophilia had changed such that a substantial probability no longer existed that respondent was a sexually violent person and likely to reoffend. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 49.

¶ 17    Unlike the respondent in *Wilcoxen*, respondent had "only just begun to participate in sex offense specific treatment." Moreover, respondent was still in the first phase of treatment and had not successfully completed a treatment group. The risk assessments also placed respondent in a much higher risk category than the respondent in *Wilcoxen*. Additionally, respondent is much younger than the respondent in *Wilcoxen*. While respondent did have a

change in attitude, he had not made the same level of progress in treatment that the respondent in *Wilcoxen* had made. Thus, we disagree with respondent the facts of his case "somewhat approximate" the facts in *Wilcoxen*.

¶ 18   Accordingly, we find there was no probable cause to warrant an evidentiary hearing.

¶ 19          III. CONCLUSION

¶ 20   For the reasons stated, we affirm the Morgan County circuit court's judgment.

¶ 21   Affirmed.