NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210615-U

NO. 4-21-0615

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* DETENTION OF RAYMOND RAINEY | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Morgan County |
|     Petitioner-Appellee, | ) | No. 98MR41 |
|     v. | ) | |
| Raymond Rainey, | ) | Honorable |
|     Respondent-Appellant). | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err by finding no probable cause shown to warrant an evidentiary hearing on whether respondent was still a sexually violent person.

¶ 2     Respondent, Raymond Rainey, a person committed under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)), appeals the Morgan County circuit court's September 27, 2021, order, in which the court found no probable cause to warrant an evidentiary hearing on whether respondent was still a sexually violent person. On appeal, respondent argues the circuit court erred by finding no probable cause. We affirm.

¶ 3                            I. BACKGROUND

¶ 4     In September 1998, the State filed its petition to have respondent committed as a sexually violent person pursuant to the Act. At a February 2000 hearing, respondent admitted he was a sexually violent person. The circuit court accepted respondent's admission, adjudicated

him a sexually violent person, and committed him to the Department of Human Services (Department). After a May 2000 dispositional hearing, the court ordered respondent placed in a secured institutional facility. In October 2001, this court affirmed respondent's adjudication as a sexually violent person and his commitment to a secured facility. *People v. Rainey*, 325 Ill. App. 3d 573, 758 N.E.2d 492 (2001).

¶ 5        In July 2003, respondent filed a *pro se* postjudgment motion challenging the constitutionality of the Act, which the circuit court dismissed. In June 2006, this court affirmed the circuit court's dismissal. *In re Detention of Rainey*, 363 Ill. App. 3d 1225, 917 N.E.2d 648 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). Over the years, respondent has received numerous reexaminations and remains committed to a secured facility. The reexamination preceding the one at issue in this appeal was conducted by Deborah Nicolai, Psy.D, a licensed clinical psychologist, and took place in March 2018. In January 2019, the circuit court found no probable cause was shown to believe respondent was no longer a sexually violent person. Respondent appealed, and on September 13, 2019, this court affirmed the circuit court's judgment. *In re Detention of Rainey*, 2019 IL App (4th) 190058-U.

¶ 6        In April 2021, Dr. Nicolai again conducted respondent's yearly reexamination, which is the one at issue in this appeal. Dr. Nicolai's April 11, 2021, report noted respondent was 65 years old and had been admitted into the Department in 1998. In preparing the report, Dr. Nicolai (1) interviewed respondent, (2) consulted with Ms. Caraway and Dr. Duffee, and (3) reviewed approximately 16 documents. The report set forth respondent's relevant history, including his criminal, sexual, and treatment histories. Dr. Nicolai also explained the Department was organized into three levels of program involvement and had a five-phase treatment program. The first level was engagement, in which residents attend treatment groups

and full disclosure and open participation was encouraged.  The second level was disclosure, and the third level was post-disclosure.  The five phases, in order, were the following: (1) assessment, (2) accepting responsibility, (3) self-application, (4) incorporation, and (5) transition.  The aforementioned labels generally describe the focus of the treatment during that phase.  The report then provided a further description of the Department's treatment program as follows:

> "Originally, there were three Core treatment groups:  Relapse Prevention, Cognitive Restructuring, and Journaling.  Residents progressed in treatment by completing Core Treatment Objectives (Objectives) within Phases.  Since 2010, residents initially complete assessments, and engage in treatment groups for residents with marginal or inconsistent treatment involvement ('Power to Change') or participate in groups working on Phase II Journaling and Cognitive Restructuring objectives.  When residents have completed treatment readiness objectives, they may progress to Relapse Prevention Groups, which are divided into groups for residents working on Phase II objectives ('Disclosure Group'), and groups for residents working on objectives in Phase III and above ('Post-Disclosure Groups').  Sex offense specific treatment objectives are generally addressed in Disclosure and Post-Disclosure treatment groups."

¶ 7        Respondent did not sign a consent to treatment until March 2005 and began attending Treatment Foundations Group, which was designed to prepare resident for participation in sex offense specific treatment groups.  His participation in that group was "intermittent," and he remained in the group until August 2018.  Respondent then began attending the disclosure group on August 9, 2018, but stopped attending on September 20, 2018.

He told Dr. Nicolai he stopped attending disclosure group because a group member talked about his family outside of group. Respondent indicated he would go back to disclosure group. Respondent was placed in Power to Change on August 2, 2019. Since his admission, respondent had only completed the following programs: (1) "Dialectical Behavior Therapy (DBT): Emotional Regulation" in September 2011, (2) anger management in January 2012, (3) communications group in February 2016, (4) introduction to thinking errors in February 2018, (5) decision-making model in February 2018, and (6) healthy relationships in May 2018. Respondent had attended but quit or otherwise was removed from the other following groups prior to completion: (1) mindfulness skills (three times and possibly a fourth), (2) distress tolerance, (3) problem solving, and (4) good lives exploration group (two times).

¶ 8       The report noted respondent had a full-scale intelligence quotient of 80, which placed him in the low average range of intellectual functioning. Specialized sex-offender treatment was available for individuals in the borderline range of intellectual functioning. Additionally, respondent's most recent plethysmograph evaluation in June 2012 showed he displayed "significant sexual arousal (Slight)" to the adult female persuasive segment, which is considered normal for adult males. Respondent did not display significant sexual arousal to any sexually deviant segments presented. Additionally, during the current clinical interview, Dr. Nicolai noted respondent demonstrated improvement in his interactive style. He was less angry and more easily engaged and approachable. Respondent identified his treatment goal as return to disclosure group but acknowledged he still had a little work to do. He felt his treatment was " 'going good.' "

¶ 9       Respondent's May 2020 master treatment plan indicated that, since his initial assignment to Power to Change, respondent had shown improvement in " 'more consistent'

- 4 -

participation, 'less disruptive behavior,' and his ability to regulate his behavior and accept redirection when needed." Respondent frequently reflected on feedback and related it to past problematic behavior or offending patterns. He also addressed his aggressive communication style and continued to work on more effective communication. Additionally, respondent discussed his tendency to make impulsive decisions driven by emotion. Respondent received two minor rule violations in February and March 2020 and a major rule violation in April 2020 for refusing to return to his assigned housing. His November 2020 treatment plan indicated respondent was still in Phase II and was attending Power to Change to address his treatment barriers and prepare for a successful return to the disclosure group. Respondent was absent from Power to Change on March 1, 2021. On March 9, 2021, respondent was placed on temporary management status after he received a major rule violation for threats and intimidation, which resulted in him missing Power to Change on March 15, 2021.

¶ 10　　　　In Dr. Nicolai's opinion, respondent, upon his return to disclosure group, needed to continue to work through his resentments and begin to focus on his inner dynamics that led him to commit the sexual offenses against female children. Specifically, he needed to recognize and restructure the cognitive distortions he holds that allow him to feel justified in his behaviors, honestly disclose his sexual offense history, and construct his sexual offense cycle to reduce risk of reoffending. Dr. Nicolai again opined as follows:

> "It is essential for [respondent] to recognize his risk of sexual recidivism and his related internal and external triggers. He needs to develop a genuine understanding of how protecting his sexual offending behaviors (through defense mechanisms such as minimization, denial, justification, blaming, secret-keeping, etc.) leaves the behaviors un-changed."

Dr. Nicolai recognized respondent had made a positive step in his treatment process by expressing a desire to improve his communication, increase his emotional regulation, and decrease his impulsivity and poor problem solving/decision making. During the review period, improvement had been noted in those areas.

¶ 11          Additionally, Dr. Nicolai opined respondent suffered from the following mental disorders: (1) pedophilic disorder, nonexclusive type, sexually attracted to both; (2) alcohol use disorder, in sustained remission, in a controlled environment; and (3) antisocial personality disorder. She explained her reasoning for those diagnoses. As to the issue of respondent's dangerousness, she used the Static-99R and the Static-2002R risk assessments. Respondent placed in the above average risk category on both assessments. Dr. Nicolai also noted respondent had the following empirical risk factors for future sexual offending: (1) deviant sexual interest, (2) offense-supportive attitudes, (3) intimacy deficits, (4) general lifestyle impulsivity, (5) poor cognitive problem solving, (6) hostility, (7) resistance to rules or supervision, (8) antisocial personality disorder, and (9) substance abuse. Dr. Nicolai opined respondent had no protective factors such as age, medical condition, or sex-offender treatment. In finding age was not a protective factor, she noted age was incorporated into the risk assessments. To a reasonable degree of psychological certainty, Dr. Nicolai opined that, based on his mental disorders and assessed risk, respondent remained substantially probable to engage in acts of sexual violence. She also opined respondent (1) had not changed since his last examination, (2) had not made sufficient progress in his treatment to be conditionally released, and (3) remained in need of institutional care in a secure facility.

¶ 12          In July 2021, the State filed a motion for a finding of no probable cause based upon Dr. Nicolai's yearly reevaluation report. In its motion, the State noted respondent had not

affirmatively waived his right to petition the court for discharge, and thus section 65(b)(1) of the Act (725 ILCS 207/65(b)(1) (West 2020)) required the circuit court to hold a probable-cause hearing.

¶ 13    In September 2021, the circuit court held the probable-cause hearing. After the attorneys made their arguments on probable cause, the court found no probable cause was shown to believe respondent was no longer a sexually violent person. The court directed the State to prepare a written order. On September 27, 2021, the circuit court entered the written order finding no probable cause existed to warrant an evidentiary hearing to determine whether respondent was still a sexually violent person.

¶ 14    On October 15, 2021, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017), and thus this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). See 725 ILCS 207/20 (West 2020) (noting the proceedings under the Act are civil in nature).

¶ 15    II. ANALYSIS

¶ 16    Respondent's sole contention on appeal is the circuit court erred by finding no probable cause was shown to warrant an evidentiary hearing to determine whether respondent was still a sexually violent person. The State disagrees, arguing the circuit court's decision was correct.

¶ 17    At the time of each reexamination under the Act, the committed person receives notice of the right to petition the circuit court for discharge. 725 ILCS 207/65(b)(1) (West 2020). If the committed person does not affirmatively waive that right, like respondent in this case, the court must "set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so

- 7 -

changed that he or she is no longer a sexually violent person." 725 ILCS 207/65(b)(1) (West 2020). At such a probable-cause hearing, the court only reviews the reexamination reports and hears the parties' arguments. 725 ILCS 207/65(b)(1) (West 2020). If the court finds probable cause does exist, then it must set an evidentiary hearing on the issue. 725 ILCS 207/65(b)(2) (West 2020). Since the circuit court only considered Dr. Nicolai's reexamination report and the facts contained in that report are not in dispute, our review of the court's finding of no probable cause is *de novo*. See *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 50, 40 N.E.3d 1215.

¶ 18        With all probable-cause hearings under the Act, the circuit court's role is "to determine whether the movant has established a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition." (Emphasis in original and internal quotation marks omitted.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 62, 980 N.E.2d 598. For a respondent to receive an evidentiary hearing under section 65(b)(2) of the Act, the court must find a plausible account exists that the respondent is " 'no longer a sexually violent person.' " (Emphasis omitted.) *Stanbridge*, 2012 IL 112337, ¶ 67 (quoting 725 ILCS 207/65(b)(2) (West 2008)). Thus, a respondent is only entitled to an evidentiary hearing if plausible evidence shows the respondent (1) no longer suffers from a mental disorder or (2) is no longer dangerous to others because his or her mental disorder no longer creates a substantial probability he or she will engage in acts of sexual violence. *Stanbridge*, 2012 IL 112337, ¶ 68 (quoting 725 ILCS 207/5(f), 15 (West 2008)). Under the Act, "substantially probable" means "much more likely than not." (Internal quotation marks omitted.) *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37, 972 N.E.2d 351; see also *In re Detention of Hayes*, 321 Ill. App. 3d 178, 188, 747 N.E.2d 444, 453 (2001).

¶ 19    In this case, Dr. Nicolai found respondent still suffered from (1) pedophilic disorder, nonexclusive type, sexually attracted to both; (2) alcohol use disorder, in sustained remission, in a controlled environment; and (3) antisocial personality disorder. Both risk assessments placed respondent in the above average risk category for reoffending, and Dr. Nicolai found nine empirical risk factors increased respondent's risk to reoffend. Moreover, Dr. Nicolai found no protective factors applied to respondent. The aforementioned evidence indicates respondent still suffered from mental disorders and was dangerous to others because his mental disorders created a substantial probability he would engage in acts of sexual violence.

¶ 20    Respondent questions Dr. Nicolai's actuarial approach to determining risk of reoffending. He notes the actuarial instruments only consider static factors that will never change. However, as respondent notes, Dr. Nicolai recognizes the limitations on the instruments in her report. Thus, Dr. Nicolai also looked at "other empirical risk factors." As to the empirical factors, respondent argues Dr. Nicolai did not explain why each factor applies to respondent. A full reading of the report provides support for all of the factors she found. Moreover, the factors are similar to the ones found in prior reexamination reports. Regarding sexual deviant interest, respondent notes his most recent penile plethysmograph showed significant arousal for the adult female persuasive segment, which was considered normal. However, he has a long history of sex offenses against young girls. Thus, we do not find her conclusion respondent had a deviant sexual interest was incorrect. As to the antisocial personality disorder, Dr. Nicolai's report explains how respondent's pedophilic disorder when combined with antisocial personality disorder increases his predisposition to engage in acts of sexual violence. Moreover, respondent challenges the substance abuse factor because he has been in custody for many years without access to alcohol or drugs. We note the fact respondent is still diagnosed with an alcohol use

disorder shows his past usage still matters in assessing risk of recidivism. Accordingly, we disagree with respondent major flaws exist in Dr. Nicolai's reliance on the empirical risk factors.

¶ 21    Respondent also claims his age is a protective factor. Dr. Nicolai notes respondent's age is taken into consideration in the actuarial instruments and thus does not need to be considered separately in analyzing respondent's risk of recidivism. She explained the actuarial instruments used have incorporated a risk reduction into the weighted age at release item, which is reflected in respondent's overall total scores. Dr. Nicolai further noted age at release has not been demonstrated to be an unequivocally protective factor. Thus, we disagree with respondent Dr. Nicolai erred by not finding his age was a protective factor.

¶ 22    Moreover, respondent notes the progress he made in treatment. While respondent made some improvement in areas of concern, he had been in phase II since 2006 and had only attended the disclosure group portion of phase II for less than 60 days before being placed in the program for residents who are inconsistent with their treatment involvement. Respondent himself recognized he had more work to do before returning to the disclosure group and his treatment goal was to return to the disclosure group. Respondent was still not even close to completing phase II after 15 years in that phase. Respondent also continued to commit major rule violations.

¶ 23    Last, in support of his argument, respondent cites the case of *In re Commitment of Wilcoxen*, 2016 IL App (3d) 140359, ¶ 1, 48 N.E.3d 277, where the reviewing court reversed the circuit court's order finding no probable cause existed to warrant an evidentiary hearing to determine if the respondent was still sexually dangerous. In *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 39, while the 61-year-old respondent was still in phase II, he attended five group sessions three days per week and had successfully completed "mindfulness, maintaining healthy

interpersonal relationships, thinking errors, decision-making, and confronting his personal history and his history of offending." The facts showed the respondent's commitment to his treatment program, which was a change in his attitude from his initial refusal to engage in treatment. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 43. The reviewing court also noted the data provided by the independent examiner showing sexual behaviors are reduced in men over their lifespan and sexual arousal reduces with age, thus making older males less likely to reoffend with age. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 45. Last, the State's examiner rated respondent as moderate to high risk on the Static-99R and low risk on the Static-2002R, and the independent examiner rated the respondent as a moderate risk on the Static-99R. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 47. The reviewing court concluded the evidence set forth a plausible account that both the respondent and the professional understanding of pedophilia had changed such that a substantial probability no longer existed that respondent was a sexually violent person and likely to reoffend. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 49.

¶ 24        Unlike the respondent in *Wilcoxen*, respondent had been in phase II for 15 years and was not currently participating in the disclosure group. Respondent himself recognized he still had a little work to complete before returning to the disclosure group. Respondent continued to have behavioral issues during the review period. Further, the risk assessments placed respondent in the above average category, and respondent exhibited nine empirical risk factors for reoffending. Additionally, Dr. Nicolai declined to find respondent's risk should be reduced further based on his age because age is reflected in the actuarial risk assessment instruments she used.

¶ 25        Accordingly, we find the circuit court did not err by finding there was no probable cause to warrant an evidentiary hearing.

## III. CONCLUSION

For the reasons stated, we affirm the Morgan County circuit court's judgment.

Affirmed.