NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210736-U

NO. 4-21-0736

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* COMMITMENT OF DONNIE R. BARRETT | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Morgan County |
| Petitioner-Appellee, | ) | No. 07MR51 |
| v. | ) | |
| Donnie R. Barrett, | ) | Honorable |
| Respondent-Appellant). | ) | Jeffery E. Tobin, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err by finding no probable cause was shown to warrant an evidentiary hearing.

¶ 2     Respondent, Donnie R. Barrett, a person committed under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)), appeals the Morgan County circuit court's December 9, 2021, order. On appeal, respondent argues the circuit court erred by finding no probable cause to warrant an evidentiary hearing on whether he was still a sexually violent person. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     In August 2007, the State filed its petition to have respondent committed as a sexually violent person under the Act. Due to an updated version of the Diagnostic and Statistical Manual (DSM-5), the State filed an amended petition in December 2014. In October

2016, the circuit court held a jury trial on the State's amended petition. The jury found respondent was a sexually violent person. At the dispositional hearing held on the same day as the sexually violent person finding, the circuit court ordered respondent committed to the care and custody of the Department of Human Services (Department) for secure inpatient treatment until he was no longer a sexually violent person. The court found secure inpatient treatment was appropriate under the circumstances of respondent's case. That same day, the court entered a written order, committing respondent to institutional care in a secure facility. Respondent appealed, and this court affirmed the circuit court's judgment. *In re Commitment of Barrett*, 2018 IL App (4th) 170204-U. Respondent filed a petition for leave to appeal with the supreme court, which denied his petition. *In re Commitment of Barrett*, No. 123697 (Ill. Sept. 26, 2018) (supervisory order).

¶ 5        In October 2021, Amy S. Louck Davis, Psy.D., a licensed clinical psychologist, conducted respondent's reevaluation at issue in this appeal. Her report noted respondent was 45 years old (he was actually 46 at the time of the report) and this was his fifth reexamination. In preparing the report, Dr. Louck Davis interviewed respondent over video. Dr. Louck Davis also reviewed numerous documents regarding respondent in preparing her report. The report set forth respondent's relevant history, including his criminal, sexual, and treatment histories. Dr. Louck Davis also explained the Department had a five-phase treatment program. The five phases, in order, were the following: (1) assessment, (2) accepting responsibility, (3) self-application, (4) incorporation, and (5) transition. Respondent was still in the first phase of the treatment program. The report explained respondent signed his consent for treatment in October 2012 but had never meaningfully participated in treatment until 2019. In November 2018, respondent met with a treatment provider and requested to begin attending treatment groups. In January 2019,

respondent began attending treatment groups.  At that the time of this report, respondent had completed several skills groups.  At his treatment team meeting in January 2021, respondent was attending treatment foundations and healthy sexuality groups, both of which he completed.  In May 2021, respondent was informed he could "phase up" to disclosure group.  However, respondent did not want to advance in treatment because of his detained status and legal matters.  Respondent also told Dr. Louck Davis he did not agree with how the disclosure group is laid out and was fine with doing some "side groups."  At the July 2021 team meeting, respondent was attending ACT-Mindfulness group.  During group therapy, respondent's participation was moderate, and he was supportive in his feedback to peers.  Moreover, the report noted respondent did not have any rule violations during the reexamination period, was not taking psychotropic medications, and was working in the dietary department.  When not in treatment, respondent was working on his legal case and reading law books and cases.

¶ 6            Regarding mental health disorders, Dr. Louck Davis opined respondent suffered from the following mental disorders based on the DSM-5:  (1) pedophilic disorder, sexually attracted to both, nonexclusive type; (2) antisocial personality disorder; and (3) alcohol use disorder, moderate, in a controlled environment.  She explained her reasoning for those diagnoses.  As to the issue of respondent's dangerousness, she used the Static-99R and the Static-2002R risk assessments.  Respondent placed in the " 'Well Above Average Risk' " category on both assessments.  Respondent's score of 9 on the Static-99R was associated with a 36.6% to 60.5% sexual recidivism risk over five years, and his score of 10 on the Static-2002R was associated with a 30% to 53.4% sexual recidivism risk over five years.  Dr. Louck Davis further explained respondent's scores were 99.7% higher than the sex offenders in the sample.  Respondent's Static-99R score indicated he was 6.9 times more likely to reoffend than the

typical sex offender, and his Static-2002R score of 10 indicated he was 7.32 times more likely to reoffend than the typical sex offender. Dr. Louck Davis also noted respondent had the following empirical risk factors for future sexual offending: (1) any deviant sexual interest or sexual interest in children, (2) antisocial personality disorder, (3) grievance or hostility, (4) poor problem-solving, (5) resistance to rules and supervision, (6) history of a nonsexual crime, (7) procriminal attitudes, (8) childhood behavioral problems or criminality, and (9) lack of emotionally intimate relationships with adults. Dr. Louck Davis opined respondent had no protective factors such as age, medical condition, or sex-offender treatment. She further found respondent's mental disorders predisposed him to engage in acts of sexual violence. Dr. Louck Davis opined respondent's condition had not changed since his last examination and respondent remained substantially probable to commit a future act of sexual violence. She also opined respondent had not made sufficient progress in his treatment to be conditionally discharged and should continue to be committed to the Department's treatment and detention facility for secure care and sexual offense specific treatment.

¶ 7        On October 12, 2021, the State filed a motion for a finding of no probable cause based upon Dr. Louck Davis's fifth reexamination report. In its motion, the State noted respondent had not affirmatively waived his right to petition the court for discharge, and thus section 65(b)(1) of the Act (725 ILCS 207/65(b)(1) (West 2020)) required the circuit court to hold a probable-cause hearing.

¶ 8        On December 9, 2021, the circuit court held the probable-cause hearing. After the attorneys made their arguments on probable cause, the court found no probable cause was shown to believe respondent was no longer a sexually violent person. That same day, the court entered its written order.

¶ 9    On December 21, 2021, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017), and thus this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).  See 725 ILCS 207/20 (West 2020) (noting the proceedings under the Act are civil in nature).

¶ 10                               II. ANALYSIS

¶ 11    Respondent argues the circuit court erred by finding no probable cause was shown to warrant an evidentiary hearing to determine whether respondent was still a sexually violent person.  The State disagrees, arguing the circuit court's decision was correct.

¶ 12    At the time of each reexamination under the Act, the committed person receives notice of the right to petition the circuit court for discharge.  725 ILCS 207/65(b)(1) (West 2020).  If the committed person does not affirmatively waive that right, like respondent in this case, the court must "set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so changed that he or she is no longer a sexually violent person."  725 ILCS 207/65(b)(1) (West 2020).  At such a probable-cause hearing, the court only reviews the reexamination reports and hears the parties' arguments.  725 ILCS 207/65(b)(1) (West 2020).  If the court finds probable cause does exist, then it must set an evidentiary hearing on the issue.  725 ILCS 207/65(b)(2) (West 2020).  Since the circuit court only considered Dr. Louck Davis's reexamination report and the facts contained in that report are not in dispute, our review of the court's finding of no probable cause is *de novo*.  See *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 50, 40 N.E.3d 1215.

¶ 13    With all probable-cause hearings under the Act, the circuit court's role is "to determine whether the movant has established a *plausible account* on each of the required

elements to assure the court that there is a substantial basis for the petition." (Emphasis in original and internal quotation marks omitted.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 62, 980 N.E.2d 598. For a respondent to receive an evidentiary hearing under section 65(b)(2) of the Act, the court must find a plausible account exists that the respondent is " 'no longer a sexually violent person.' " (Emphasis omitted.) *Stanbridge*, 2012 IL 112337, ¶ 67 (quoting 725 ILCS 207/65(b)(2) (West 2008)). Thus, a respondent is only entitled to an evidentiary hearing if plausible evidence shows the respondent (1) no longer suffers from a mental disorder or (2) is no longer dangerous to others because his or her mental disorder no longer creates a substantial probability he or she will engage in acts of sexual violence. *Stanbridge*, 2012 IL 112337, ¶ 68 (citing 725 ILCS 207/5(f), 15 (West 2008)). Under the Act, "substantially probable" means "much more likely than not." (Internal quotation marks omitted.) *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37, 972 N.E.2d 351; see also *In re Detention of Hayes*, 321 Ill. App. 3d 178, 188, 747 N.E.2d 444, 453 (2001).

¶ 14 In this case, Dr. Louck Davis found respondent suffered from (1) pedophilic disorder, sexually attracted to both, nonexclusive type; (2) antisocial personality disorder; and (3) alcohol use disorder, moderate, in a controlled environment. Both the Static-99R and Static-2002R assessments placed respondent in the highest risk categories for reoffending. Respondent's score of 9 on the Static-99R was associated with a 36.6% to 60.5% sexual recidivism risk over five years, and his score of 10 on the Static-2002R was associated with a 30% to 53.4% sexual recidivism risk over five years. Dr. Louck Davis further explained respondent's scores were 99.7% higher than the sex offenders in the sample. His Static-99R score indicated he was 6.9 times more likely to reoffend than the typical sex offender, and his Static-2002R score indicated he was 7.32 times more likely to reoffend than the typical sex

offender. In addition to respondent being in the highest risk categories for reoffending, Dr. Louck Davis's report noted respondent had nine other empirical risk factors that increased his risk to reoffend. Thus, Dr. Louck Davis considered more than just the percentages in determining respondent was substantially probable to engage in a future act of sexual violence. As in his prior appeal, respondent contends Dr. Louck Davis did not explain how respondent exhibited the nine factors or explain how each factor itself affected respondent's risk of reoffending. However, we continue to find a full review of the report shows the nine factors are supported by the facts contained in the report. The report also notes the risk factors identified "represent statistically significant correlations with recidivism." Additionally, we note respondent cites no authority for his claim antisocial personality disorder cannot be both a diagnosis and an empirical risk factor when a person has been diagnosed with more than one mental disorder. In her report, Dr. Louck Davis explained respondent's antisocial personality disorder has "a synergistic effect in combination with [respondent]'s pedophilic disorder and it increases his predisposition to continue to engage in acts of sexual violence." Moreover, neither respondent's age nor his medical condition decreased his risk. Respondent takes issue with the fact his age is not a protective factor. However, in her report, Dr. Louck Davis explained the actuarial assessments she used take age into consideration and no additional age-based risk reduction was warranted. The aforementioned evidence indicates respondent still suffered from mental disorders and was dangerous to others because his mental disorders created a substantial probability he would engage in acts of sexual violence.

¶ 15        While respondent has completed treatment foundations group during this reevaluation period and had previously completed decision making model group, he had declined to "phase up" and was still considered in the first phase of the treatment according to Dr. Louck

- 7 -

Davis's report. The October 2021 reevaluation report shows respondent had continued to participate in some groups, had obtained a job, and had no rule violations. However, the report states respondent had chosen not to advance in treatment, and it overall does not demonstrate respondent's conditions and risk had changed during the reexamination period at issue. Even if respondent is treated as being in phase two, he was still early in his treatment in that phase. Moreover, respondent had declined to be in the disclosure group and withdrew from the self-awareness group after learning his journal entries needed more information.

¶ 16 Last, in support of his argument, respondent cites the case of *In re Commitment of Wilcoxen*, 2016 IL App (3d) 140359, ¶ 1, 48 N.E.3d 277, where the reviewing court reversed the circuit court's order finding no probable cause existed to warrant an evidentiary hearing to determine if the respondent was still sexually dangerous. There, while the 61-year-old respondent was still in phase two, he attended five group sessions three days per week and had successfully completed "mindfulness, maintaining healthy interpersonal relationships, thinking errors, decision-making, and confronting his personal history and his history of offending." *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 39. The facts showed the respondent's commitment to his treatment program, which was a change in his attitude from his initial refusal to engage in treatment. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 43. The reviewing court also noted the data provided by the independent examiner showing sexual behaviors are reduced in men over their lifespan and sexual arousal reduces with age, thus making older males less likely to reoffend with age. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 45. Last, the State's examiner rated the respondent as moderate to high risk on the Static-99R and low risk on the Static-2002R, and the independent examiner rated the respondent as a moderate risk on the Static-99R. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 47. The reviewing court concluded the evidence set forth a plausible

account that both the respondent and the professional understanding of pedophilia had changed such that a substantial probability no longer existed that respondent was a sexually violent person and likely to reoffend. *Wilcoxen*, 2016 IL App (3d) 140359, ¶ 49.

¶ 17 Unlike the respondent in *Wilcoxen*, respondent was still in the early stages of his treatment program and declined to advance in it. The risk assessments also placed respondent in a much higher risk category than the respondent in *Wilcoxen*. Additionally, respondent is much younger than the respondent in *Wilcoxen*. While respondent's attitude has improved since his initial intake, he had not made the same level of progress in treatment that the respondent in *Wilcoxen* had made. Thus, we disagree with respondent the facts of his case "somewhat approximate" the facts in *Wilcoxen*.

¶ 18 Accordingly, we find there was no probable cause to warrant an evidentiary hearing.

¶ 19 III. CONCLUSION

¶ 20 For the reasons stated, we affirm the Morgan County circuit court's judgment.

¶ 21 Affirmed.